We will hear argument this morning in Case 14-6368, Kingsley v. Hendrickson. Ms. Ward. Mr. Chief Justice, and may it please the Court, the core of the liberty interest protected by due process is the right to be free from unjustified bodily restraint in harm. It's hard to imagine anything more inconsistent with these core rights than the use of a weapon on a restrained detainee. And that is why Respondents urge this Court to import a subjective intent element that doesn't relate to due process, but is instead drawn from the test for violation of a convicted prisoner's Eighth Amendment rights. Respondents candidly admit that they favor this test because it better insulates guards from liability. But that is no reason to ignore meaningful constitutional distinctions between those who have been convicted and those who have not. Ginsburg Why isn't the safety of the detainee, why isn't that just a facet of the use of excessive force? I think that's how the district court treated it. Ward The safety of the detainee was the stated objective for the use of the force in this case, and that is a legitimate interest. But the determination of whether the force itself was excessive is based on the Bell test for legitimate purpose, legitimate criminological objective. So then the test is objectively then whether or not the use of force was excessive to the state of need. And the Fourth Amendment test provides a good, familiar workable standard that can be used to determine that. Ginsburg You mentioned the Fourth Amendment now, but as I understand it, the complaint just alleged a due process violation, it didn't refer to the Fourth Amendment. Ward That's correct, Your Honor. And the Fourteenth Amendment substantive due process test, as articulated in Bell, does provide the clearest application by the Court of the rights of detainees in the prison context. And the Court has stated that Bell does apply to the excessive force claims of pretrial detainees, and it makes perfect sense because, like a prison policy that goes too far, it's easy to see how a use of force can be administered as punishment. Kennedy So suppose you have a detainee being held in a prison population. And is your point that the prisoners can be punished, but the detainee cannot be? Ward That's correct, under the Eighth Amendment. Kennedy Now, suppose the prisoners are misbehaving, they're unruly, they're yelling and throwing things at the guards, and the guards say, all right, lock down for 24 hours, you can't go to the mess hall. Now, the detainee raises his hand and says, oh, excuse me, I'm a detainee, I have a different standard? Is that your – is that what has to happen here? Ward Yes. But the problem with the hypothetical is that the – that's a legitimate penological objective. So under either test, neither the prisoners are being punished. Kennedy So there can be punishment for simply not – in order to maintain discipline within the prison population. You can be deprived of your exercise or your right to go to the mess halls. So you can, quote, punish for that purpose, even if it's a pretrial detainee? Ward If it's a pretrial detainee, you can discipline for – to enforce legitimate objectives. If it's a convicted prisoner, even harsh convicted prisoners. Kennedy You use the word discipline. I use the word punish. Are they the same? Ward They're not the same. Punishment is the end result of application of the Vell test. Discipline is what happens to you if you've failed to follow the rules. Scalia And it doesn't matter if the – if the punisher, so to speak, is simply an individual guard at the prison versus the State, which has run a prison that it knows has these cruel guards. It doesn't matter. The tortification of the due process clause, right? Ward Right. It doesn't matter. And, in fact, guards are probably entitled to even less deference than prison administrators who are making policy for the Court. In footnote 38 of Vell, the Court acknowledged that – or suggested that individual instances of abusive practices might be – that guards might be given less deference. Scalia It's a substantive due process you're arguing, right, not procedural due process. Ward Yes. Scalia And it's not the Eighth Amendment. You're not relying on the Eighth Amendment. Ward That's right, other than to distinguish what you can do with a convicted prisoner versus a detainee. Kennedy I just have to tell you, I find it very difficult to understand how there would be a different standard if the same facts occurred but it was an inmate who was serving a sentence. What is the rationale for why they should be different? Ward The rationale for why they should be different is it's a – it's a after-the-fact analysis. And the Constitution requires that detainees not be punished. And it allows – Sotomayor I'm sorry. Why is anybody – Kennedy But you said that they could be disciplined. That's – Ward I think the difference – Kennedy What am I going to read to find a difference between discipline and punishment? Ward I think the difference is punishment is the result of applying the Vell rationally related test. If use of force is not rationally related to a legitimate objective, we can define that as punishment. If the act complained of fails the Vell test, objectively, we can call that punishment. Sotomayor I'm just having a problem with trying to understand why we're talking about a difference between any of the amendments, the Fourth, the Fourteenth, or the Eighth. The cruel and unusual punishment, I thought, was generally – generally applicable to the sentence a prisoner receives. That's very different than to the application of force separate from the – from the sentence. We're talking about whether and under what circumstances a prison guard or a prison is liable for using unnecessary force on another person. I don't think that taking any prisoner and for no reason, arbitrary reason, banging his head on the wall because you think that will send a message to other prisoners would be acceptable, do you, under any of the amendments? Ward That's correct. Sotomayor All right? So I just don't quite understand the difference. I think the issue is, one, how you instruct the jury. And the government is saying you instruct the jury by saying you have a subjective intent to punish the prisoner, you just want to beat him up, or you're inflicting harm that's not necessary or reasonable for a legitimate penological reason, correct? Ward That's correct. That's correct. Sotomayor Do you have a different standard than the government? Ward We do, Your Honor. Sotomayor All right. Then yours is broader. Ward Well – Sotomayor And explain why. Why is the government standard not good enough? Ward I misspoke. I'm sorry. I misspoke. We agree with the government as to what the appropriate standard is, but we disagree with the government as to how the standard was improperly applied in the jury instructions in this case. Sotomayor That I understand. I'm just talking about the standard now. Ward We are in agreement with the Solicitor General on the standard. Scalia What if I don't agree with the solicitor? Is there anybody here to argue for a different standard? No? We just have to pick between two people who argue for the same standard, right? Ward I believe the Respondents have a different standard in mind, Your Honor. Roberts Is it possible – I hadn't thought about it too much – that you would have different priorities in training, depending on whether you're dealing with people who have already been convicted of crimes and people who are being detained? Perhaps people who have been convicted tend to engage in particular activity more than people who are just awaiting trial? Ward I think that detainees can be as dangerous as prisoners, but as to your point about training standards, currently, as the Amici former corrections officers point out, they are trained to an objective standard. And it's difficult to even comprehend how you would train officers in view of a particular subjective maliciousness element. Do you explain to them how they can use force as long as they're not malicious, as long as they never admit to it? Roberts Of course, you're not going to say you can't act with malice, but it would have to be more careful with respect to people who have been convicted. You might tell the officers, look, you have more flexibility with respect to people who are already subject to a conviction. You have to be – to phrase it the other way, you have to be more careful with respect to people who are simply being detained. But it's very complicated in a case like this because Respondents make a very persuasive case that the convicts are actually less of a threat than the – often than the pretrial detainees. You're going to go to jail if you've got 10 days on a DUI or something like that. But the people who are detained pre-conviction may be multiple murderers. That's certainly true. There certainly may be dangerous folks who are deserving of, you know, in the prison context, if they're dangerous and discipline needs to be imposed, that's a possibility. The question is, how do we evaluate their excessive force claims after the fact? I still go back to my question, why is there a difference at all? What you seem to be suggesting is that gratuitous violence, unnecessary violence can be directed to pretrial and post-trial detainees. Isn't your objection that unreasonable, unnecessary force is not permissible? Why are we giving a license to prison guards to use unreasonable or unnecessary force against anybody? I think I understand your question, Justice Sotomayor. Convicted prisoners actually can be punished. That is one of the legitimate objectives with respect to convicted prisoners. But they can't be punished corporately. They can be denied good credit, good time credit. Do you think we could put them, you can knock them against the wall as punishment? No. Not in terms of discipline. It may be that some matter, immediate need justifies that action. But are you suggesting that as punishment they could do it? Unnecessary force. Unnecessary, not punishment, or even punishment. They looked, they said the, a bad word to the prison officer. The egregious use of force will fail both tests. Well, that's what I wanted to ask about. As a practical matter, in evaluating excessive use of force claims, how much difference does it make whether there's a purely objective standard or a subjective standard? It will be the rare case, I would imagine, where there's direct evidence of the officer's subjective intent. So the subjective intent is going to be inferred from objective factors. So what, give me an example of an excessive use of force claim that would involve the unreasonably, a use of force that's objectively unreasonable, but there is not the subjective intent to harm. Mr. Kingsley's case might be just such an example. It was unreasonable for him to be tased. And under our jury instructions, the jury well could have found that that use of force was unreasonable. But yet, the subjective element that was injected to our jury instructions could have made it, it could have resulted in the finding for the verdict for the respondents. Well, in a case where there's, where the jury thinks that there was force that was objectively unreasonable, and in particular if it's a, if it's a 1983 claim or a Bivens claim where the officer has qualified immunity, it doesn't seem to me that they're going to be very many cases where the difference between these two standards will result in a different outcome. Am I wrong? I think you are wrong. I think that juries give a lot of deference to officers, and if they can, if they're allowed to inject their subjective good faith as part of a response to the elements for proving the case by the prisoner, that would result in a lot more findings and verdicts in favor of guards. Even in instances where objectively unreasonable, unjustified force is used. And it's in the... I'm not saying that you could use excessive force, unreasonably excessive force and be acting in good faith. Well, there's the issue of, the issue of qualified immunity with respect to the mistake of law, they could believe that the law actually allows for them to engage in whatever use of force that they're, that they're using, but... No, but we're asking what the standard ought to be. We don't talk about qualified immunity until we know, until the officer knows the standard. Yes. And as of this point, I do not know why the standard should be different for convicts as opposed to pretrial detainees, other than for purposes of rehabilitation. And even that has to be reasonable. You want us to say that under these facts, the result might be different, depending on if it's a pretrial detainee or an inmate, and that's just very difficult for me to understand why that should be. It's, it's, using the objective test for a pretrial detainee is faithful to the Constitution. It's faithful to due process. Due process talks about deprivations of life, liberty, or property. Deprivations are X. The Eighth Amendment, which governs the use of force with respect to convicted prisoners, talks about cruel and unusual punishment. There's a, there's an inherently subjective element to cruel and unusual punishment. But, but, Ms. Ward, you've said a few times that we're supposed to be looking to see whether something counts as punishment. And in the Eighth Amendment context, we've suggested that that term, punishment, does indeed have a subjective component, that it requires some kind of intent to chastise or to deter. So, you know, I'm a little bit with Justice Kennedy that I'm not quite sure what the word punishment is doing in this context. But if we're looking for punishment, we have indicated that punishment is a subjective concept. Yes. In the Eighth Amendment context. Because the word punishment appears in the Eighth Amendment. But as it's used in Bell, it's referring to X. It's referring to evaluation of prison policies or uses of force that go too far. Yeah, but you, you brought punishment into this discussion. We didn't. Justice Kagan didn't. Your brief is full of references to punishment. You say it's punishment that's bad. You want to abandon all of that? That's not the criteria? No, that is the criteria. I don't understand it either. It seems to me that there are some circumstances where a guard is trying to punish someone. But there are many circumstances where a guard has something totally else in mind. He's trying to keep order in the prison. A policeman might try to stop a fleeing felon. That has nothing to do with punishment. And so what might guard the normally, the provision that governs the policeman is the Fourth Amendment. I would guess that if you're talking about trying to keep order in a prison, the Due Process Clause may have something to do with it. This person who may be awaiting a lawyer is there, is liberty-confined, and you cannot use excessive force. I don't see what punishment had to do with it. But I did think, and I don't know the answer, but I looked it up in the Model Penal Code, that either the policeman who's trying to stop someone or perhaps the prison guard who's trying to keep order cannot use excessive force. Now, what is excessive force? It is force that is objectively unreasonable. Now, suppose he does. The next question is, is a state of mind required? We can imagine it would be a weird case, but we can imagine a very weird case where the force is objectively unreasonable, but the policeman is totally innocent. Somebody told him that is a taser, but it's really a gun. He uses it. Objectively unreasonable. State of mind innocent. Is he liable? As far as I can tell, the government thinks he should be. As far as I can tell, you think he should be. End of case. We just say everybody agrees. Is that where we are? Because I'm rather worried about holding the policeman in this weird case where his state of mind is 100 percent innocent. What here happened is that they read in a little bit of culpability, the least onerous subjective intent. It's called recklessness. You have to be aware of the risk. So I'm rather tempted to say, yes, there should be something guilty about this policeman. Now, there is where I am at the moment, and I'd like you to explain where I should go. The Fourth Amendment doesn't require any inquiry into the subjective state of mind. And the Fourth Amendment test, in the case of a police officer on the street, does the job adequately. It provides the adequate amount of deference, and it protects people from excessive uses of force. That same analysis can do the job in the prison situation when a pretrial detainee's interests are at stake as well. The subjective intent element shouldn't be required of the test at all, because that only comes in when there is a question of cruel punishment. Now, at least in a prison, I would think a prison guard would have a pretty tough time thinking that if this person is in prison because he's been convicted of a crime, I can try to control his riotous behavior as long as I reasonably believe that what I'm doing is correct, even if it turns. But now I have a totally different standard where this person's in the same cell doing the same thing, but he hasn't yet had his trial. He's just there waiting for his lawyer or he's been there because bail has been denied. I don't see how you administer such a rule. What's the answer to that? It's okay for the standards to be different, because it's more faithful to the Constitution. It's okay for the analysis of the excessive force claim in both situations to be different. And I will stop there. Sotomayor, I'm still struggling because we are trying to create boxes in a way that makes no sense to me. There are all sorts of reasons for doing things, and the Eighth Amendment cases that we have have to do with punishment qua not bringing control, not responding to a prison outbreak or a fight or anything else, but the types of conditions that are imposed on prisoners as punishment, i.e., you've broken an administrative rule, and now we're going to put you in shackles in the dark dungeon. We've already said in one case, you can't do that. You may subjectively and legitimately think that that will keep you constrained, but that's too far. It's not — it's unwanted and unnecessarily cruel and unusual. All right? Yes. But that's very different than this situation, whether it's a pretrial detainee or a post-trial detainee. I don't think the Constitution gives you a free pass to punish a prisoner by inflicting unwanted corporal punishment. I'm not talking about the conditions of punishment, i.e., good time credit, solitary confinement, segregation of some sort, deprivation of a prison job you have. That clearly — you need an Eighth Amendment sort of subjective intent element. I'm talking about the use of force for purposes of restoring discipline. That's what this was about, wasn't it? Yes. So I keep saying, why are we thinking about the necessity to impose subjective standards or any other standards or that they have to be different? I see that I have used my time. Yes. And can I respond briefly? Sure. We'll give you an extra minute. Thank you. Court intruded on your time. Thank you. The Court could decide that the standard for all excessive force cases should be an objective standard. I think that the jurisprudence related to convicted prisoners has already shut that door in requiring a subjective intent element for a convicted prisoner. But it's more faithful to the Constitution to actually give effect to the rights of detainees, which are much closer to the rights of free citizens because they haven't received all of their due process pursuant to a legal conviction. Thank you, counsel. Mr. Bash. Mr. Chief Justice, and may it please the Court. If there's one point I would like to convey to the Court this morning, which I think is responsive to a number of questions that were asked in the opening presentation, it's that there are two relevant differences between the standard we're advancing and the standard Mr. Clement is about to get up and talk about. One goes to what sort of purpose is required, and the other goes to how you establish that purpose. On the first, Mr. Clement says it is malicious and sadistic intent. We say it is a punitive purpose. It is clear as day in this Court's Eighth Amendment cases, Farmer, Wilson, Whitley, that malicious and sadistic comes from the wantonness requirement of the Eighth Amendment, cruel and unusual. He is just wrong about that. The only argument he has on that it should be malicious and sadistic is Judge Friendly's opinion that this Court has cited in a couple of Eighth Amendment cases. But if you look at Judge Friendly's analysis, this is on page 28 of the red brief, he very clearly says that there's a whole list of factors relevant. Malicious and sadistic is one factor. It's not dispositive, and all of the other factors are objective. So I don't think you can extrapolate from a few citations to Judge Friendly that malicious and sadistic is appropriate for a due process claim, for someone who has not been convicted of an offense. And by the way, I think this is a due process case, right? It's not a Fourth Amendment case and it's not an Eighth Amendment case, is that right? That's correct. It's just that you want to bring into the due process analysis. Justice Scalia, you characterize it as substantive due process, and I think a couple cases have talked about it like that, but it's not exactly substantive due process. I mean, the rule this Court has established is that before you go through the procedures of the Bill of Rights conviction or a guilty plea and so forth, you may not be punished. So it really sounds a little more in procedural due process than I think your question gave it credit for. Now, the other point is how you establish that purpose. Under the Eighth Amendment standards, this Court has set forth, it has interpreted cruel and unusual punishment to require a degree of subjective intent. Although it has used the term punishment to describe the general legal standard under the Due Process Clause, of course, that clause does not say the word punishment. And your standard in this case as to the pretrial detainee is that he is entitled to what protection? What is your standard? It's exactly what Justice Rehnquist said for this Court in Bell, which is that either an intent to punish, which I take to be shorthand for an intent to achieve objectives that are not reasonable at that point for that person's status in the system, or objectively there's no reasonable relation between the use of force and those objectives.  Wait, wait, wait, wait. The first one, that's the, I mean, now you've just run, I could say the objective part has to be objectively unreasonable force. Now, the question is, is there also some kind of subjective part? And at this moment, it seems to me on the one hand you say yes, and on the other hand, no. No, I'm saying no on both hands. No. No, in other words, even though this man, the defendant, is completely innocent, it wasn't his fault in the slightest, he wasn't even negligent, the guard is nonetheless liable, I can't find anywhere, not even in Fourth Amendment cases, could I find a case where that actually occurred. Because, Justice Breyer, that's not what we're saying. I think the premise of the question conflates two different types of intent, and this is exactly what the court of appeals did below. There's the intent to actually do the act. So if I, if he had accidentally tasered him. Obviously, you have the intent to do the act. That obviously isn't probable. That was the premise of your question about what you think of the tasers. No, it isn't. Well, the tasers unquestion it. I mean, it is. Can I ask my question? Yes. It is objectively unreasonable, but it is an odd case where the policeman is, or warden or whoever, is totally reasonable in thinking the contrary, and that focuses you on the question of whether there is some kind of either purposeful, knowledgeable, or reckless, that being the weakest, requirement in respect to the use of objectively unreasonable force. Not the act, but knowing that it is objectively or reckless in respect to, you say? Let me describe how it works. I want to know what your view is on that. My view is this.  That's the lesson here. Well, that's you mean, just to confirm, you mean voluntary? Well, not a mistake with a taser or a gun? No, a mistake with a taser or a gun would not be an intentional application of force. It would be a negligent application of force. And I think under Daniels v. Williams, that's the slip on the pillowcase case, that would not count. The question we're asking is what does the connection have to be between that intentional use of force and any legitimate, penological objective? And bear in mind, the officer has to know all the relevant facts. So if you have an eggshell prisoner who has some special medical condition that nobody knows about, that's not going to bear on the constitutional analysis. It's the facts that the officer is aware of. And I think what this Court's decisions in Bell, Block say is that an objectively unreasonable deprivation of liberty violates the Due Process Clause. And just as confirmation that that is a objective standard, in both Bell, this is at page 561, and Block, this is at page 585. The Court said there's not even an allegation here that there was a punitive intent or some ill intent. Therefore, we're going to analyze it under an objective test. And the opinion of the Court is that it's a punitive intent. Scalia. Is this different for inmates as opposed to detainees? Because what the due process clause is. What's the test for inmates? You don't apply the same test. The malicious and sadistic attempt, a test that Mr. Clement is asking you to apply to pretrial detainees. But remember, this would probably not only apply to pretrial detainees, certainly not only pretrial detainees in mixed populations. It would also probably apply to immigration detainees, juveniles who have not been subject to a criminal punishment, and a host of other people who have not gone through the rigors of the Bill of Rights, who have not been convicted of a crime. Kennedy. Do you agree that the pretrial detainee can be deprived of privileges because of bad behavior that's disruptive to the confinement? Yes. And that's what I was getting at when I said the way I think Justice Rehnquist used the term punishment in the due process cases is as shorthand for a deprivation of liberty in the prison context that has no reasonable relation to any legitimate objective. So if it was why wouldn't persons who were being arrested and persons who have been convicted and are incarcerated have the same due process rights as detainees? Because the due process clause permits the punishment of people who are convicted. And as this Court has interpreted that in the context of convicted prisoners, it's that convicted prisoners may be subject to harsher conditions than pretrial detainees. So it's okay to use excessive force in the case of a prisoner, somebody who has been convicted? The question here is what did the police – was it objectively unreasonable to use the extent of force that was used in this case? So are you saying that in the case of a convicted prisoner, that it would be okay to use excessive force? Well, it would probably almost always violate the Eighth Amendment if there was an actual intent to punish and the punishment was carried out by the use of force. But I think often what we're talking about is these cases on the margin where the officer maybe had mixed motives or whatever. And the idea behind the Eighth Amendment jurisprudence is that we're going to amp the standard up when you're talking about someone who is subject to the penological force of the case. Kennedy, did you give us an example of what a guard could do to an inmate and a guard could not do to a pretrial detainee other than for rehabilitation purposes? I don't think the use of force as discipline is ever appropriate. But, you know, in a max prison where you only have felony convicts, I think at the margins, officers are going to be able to use slightly more force than they can with pretrial detainees, where people who are held, as this Court said in Salerno, in regulatory detention. Well, I think it's pretty unusual, isn't it, to have a pretrial detainee in a maximum security prison? No. I was just trying to identify for Justice Kennedy how the standard at the margins might be different. So when you're talking about facilities. You come up with a hypothetical that I think is quite unrealistic, so I'm not sure it's responsive. I didn't mean to come up with a hypothetical. I'm even not sure why that's right. You get a free — the Constitution permits you to get a free kick-in. That is certainly. I am a prisoner and, you know, I want to establish discipline so I can freely kick them any time I want. That's certainly not what we're saying. What we are saying is that the prohibition on what officers can do to convicted prisoners is they cannot punish them cruelly and unusually. And it makes sense that this Court has upped the subjective intent standard with respect to convicted prisoners, because it reflects that the constitutional prohibition is only cruel and unusual punishment. Here, the Constitution.    Can I provide my answer? My answer is yes. Sebastian, would you explain? You agree that it's only the objective standard, the use of excessive force, but then your bottom line is the same as the Respondent. That is, you think that this verdict should hold, and there should not be any new trial. Can you explain how your bottom line is the same as Respondent, but the standard is the same as Petitioner? I would take the Court to page 277 to 278 of the Joint Appendix, which lists the pertinent jury instructions. And the jury was instructed to find four elements, three of them no one is contesting at this stage. The third one is the key element. This is on page 278. And it said, Defendants knew that using force presented a risk of harm to plaintiff, but they recklessly disregarded plaintiff's safety. If it full-stopped there, I would agree you'd naturally infer that, at least on this review, as importing a subjective element. But then it tells you exactly what recklessly disregarded plaintiff's safety means, by failing to take reasonable measures to minimize the risk of harm to plaintiff. And I see that as no different than the proportionality standard that Bell itself requires. Thank you, counsel. Mr. Clement. Mr. Chief Justice, and may it please the Court. This Court should adopt the subjective test fashioned by Judge Friendly in Johnson v. Glick in addressing a due process claim for excessive force by a pretrial detainee. This Court has already adopted that standard in the Eighth Amendment context for convicted prisoners, and both doctrinal and practical reasons strongly suggest that it should apply the same test in the due process context in which that test originated. And the contrary propositions are simply not compatible with this Court's precedents. In Johnson v. Glick, the bottom line was that there was liability. Isn't that so? No, Justice Ginsburg. The bottom line was remand so that there could be a factual determination based on the four-factor test that Judge Friendly articulated. So in the lower courts, they dismissed the claim. Judge Friendly recognized that the due process clause does provide protection, and then he articulated that four-factor test, one important part of which is a subjective factor that I think sensibly tries to distinguish those situations where an officer is trying to use force in a good-faith effort to maintain order and discipline and contrast that with a situation where the force is being used sadistically or maliciously for the very purpose of inflicting pain. Ginsburg, but if we look at this case, the conduct was deliberate. Using the taser was deliberate. The effect known to the officer was that it would cause pain. So what subjective element other than I'm using, I'm deliberately using force, I know it will cause pain? What beyond that? So the question is, is this a good-faith effort to try to get these handcuffs off, or is this somebody who's acting simply to punish the detainee? And I think that's what the good-faith test really gets to. It gets to what I think in some respects is the nub of the issue here, which is the fact that the defendant says, I wasn't resisting, I wasn't spreading my arms apart,   And they came and tased me, all right? The officers say instead he was pulling his arms and resisting it so we couldn't get the handcuffs open. So assuming a jury credits the Petitioner, what would that do under you? How would that be evaluated under your test? Well, I suppose that if the jury actually credited Petitioner's version of events, they might be able to find liability under the Johnson v. Glick standard. I think it's worth recognizing that there was a jury trial here, and under a recklessness standard they ruled in favor of our clients. And it seems to me that it would be very odd to have to have a new jury trial. Sotomayor, that's why I keep trying to go back to what is the – under what circumstances and how does your test get to the gratuitous use of violence or the excessive use of violence where it's unnecessary? Well, I think it gets to it in a way that provides a degree of deference to the difficult decisions that the guard has to make, which is it recognizes that unlike the arrest contacts in other situations, prison environment is different. There are going to be lots of situations where guards are going to use force. But that instruction is going to be given anyway. What's under the Bell v. Wilfish case, that presumption was given anyhow. Well, but I don't – I mean, I think there are real differences between the instruction. And if you look at – the clearest way to illustrate this is if you look at Joint Appendix page 78 and you look at the instruction that was offered by the Petitioners below, it flat-out says you can't take into account the good faith intent of the officer. It's irrelevant. Now, I think that's perfectly appropriate in a Fourth Amendment instruction where there's objective reasonableness, and this Court said a bunch of times that the subjective intent of the officer doesn't matter. But in the difficult context of a prison, I think Judge Friendly got it right, I think this Court got it right with respect to convicted prisoners, which is you give the guard a little bit of flexibility because it's a difficult situation. And if you say after the fact, maybe they shouldn't have used the taser, or if in a case where they used the taser twice, maybe they should have used it once but not twice, those questions of degree ought to be some degree of deference. This test allows for that. It gives the jury a landing place. If they look at this in hindsight and say, you know, I wish they hadn't used the taser, but I think they were doing it to get the handcuffs off. This isn't a case like Hudson v. MacMillan where they were just taking the guy out and beating him up punitively. So I don't think there should be a constitutional violation here. Breyer, what you say is equally true where you're running a jail, isn't it? And it's equally true where the person in the jail is — has been convicted or hasn't been convicted. The need for order is the same. So how would it apply in a circumstance where there's a claim of excessive force to someone who has been convicted, but it has nothing to do with punishment? No one thinks it has to do with punishment. The situation was one where they were trying to maintain order, or the situation was one where they were trying to give medical treatment, or the situation was any one of a thousand. What I can't see is why the punishment standard should apply whether he's been convicted or not. And I also can't see why they should be different, whether he's been convicted or not. Well, I think the punishment standard applies in both cases, Justice Breyer, because the relevant constitutional text has been interpreted to require punishment. In the Eighth Amendment context, it's the same. I suppose you brought a lawsuit under the Due Process Clause. I mean, and there are instances where people are seized in jail. So it was under the Fourth Amendment. I mean, why is punishment in these other situations? I can't figure that one out. I can't figure out — and then I looked at the model penal code. The model penal code seems to require both excessive force and some kind of state of mind, which could be recklessness, which is what the judge said here, or maybe even negligence. Well, obviously, if you adopt, as this Court has in the Eighth Amendment context, the understanding that punishment inherently requires some subjective mental state, the lowest available mental state is recklessness, and under that standard, which the jury clearly was instructed under, we would prevail. So that would lead to an affirmance. Now, I would still think, since it is well established that the relevant standard for excessive force in cases involving convicted prisoners is the Johnson v. Glick standard, I think since that's established, and nobody here is asking for Whitley or Hudson to be overruled, and there are so many practical imperatives for treating pretrial detainees and convicted prisoners the same, I think this Court should apply the Johnson v. Glick standard in the due process claims of pretrial detainees. In a subsequent case, if the Court wants to reconsider what the test should be, even under the Eighth Amendment, and apply it uniformly across pretrial detainees and convicted inmates, that may make some sense. I also think there's some very interesting questions lurking out there about what kind of objective evidence of unreasonableness is enough in an Eighth Amendment case, or if we prevail a Fifth Amendment case, what kind of objective evidence is enough to get to the jury on the subjective intent question. I think those are all questions that this Court may eventually have to confront. But I think the first step in a case where nobody wants to overrule Hudson and Whitley is to suggest that since the imperatives that the officers face with respect to pretrial detainees and convicted inmates are essentially identical. Scalia. Why is that? Why don't you tell us why that's so? Clement. Well, I'll tell you why that's so, and it's so in these — particularly in a local jail like Monroe County, Wisconsin, where you have these individuals, they're housed side by side. As the Chief Justice has alluded to, in this kind of jail, the only way you can serve there a sentence as a convicted individual is if you've been convicted for a relatively minor offense. But if you're there pretrial awaiting your trial, any — any — any book — any offense in the criminal book could be your charge of — that — where you're being held for, so it could be a murderer. And I think this Court has recognized, and this is — I mean, this is empirically true, this Court has recognized this empirical fact, first in Bell v. Woolfish, then in Block v. Rutherford, and more recently in the Florence County case. When you have — And — sorry. There's a lot to what you say, that sometimes the practical concerns are the same for pretrial detainees and for convicted criminals. There's also something to the other point of view, which is that in our cases, we've consistently said that if you're a pretrial detainee, if you haven't been found to have committed wrongful conduct, you shouldn't be treated the same way as people who have been found to be — to have committed wrongful conduct. That for the convicted criminals, it's kind of a, you know, we're allowed to punish them because they've done something wrong. And we haven't found that yet for the pretrial detainees. And so what place in your system is there for that, you know, very commonsensical and also, you know, normatively attractive proposition that people who haven't been Justice Kagan, there is a place for that in the doctrine. I would submit it's not in the excessive force cases. So let me tell you where I think it is. I mean, Sandin v. Conner is a good example. There, the Court said that with convicted individuals, it was perfectly permissible to move them from minimum security to maximum security as a punitive matter, and you didn't even have to give them any process to do that. I don't think that same analysis would apply to pretrial detainees. Another example is footnote 17 of the Bell v. Wolfish case, where I think it's understood that at least if the statutory law provides for it, that if you're convicted, you can be sent out to the work gang and have to pick up trash along the highway. I don't think you can do that to a pretrial detainee. But whatever differences there are, I don't think they arise in an excessive force context. I think if you think about this Court's cases, I mean, start with Whitley, that if you're trying to quell a prison riot and you have an inmate who's going up the stairs trying to go where there's an unarmed guard, it doesn't make a width of difference whether that inmate is a pretrial detainee or a convicted individual. Kagan. So that might be, but let's take another comparison, and the comparison is two people who have been indicted for the same offense, and one makes bail and he's out on the street, and the other doesn't make bail, and so he's in an institutional facility. And the one who's out on the street has some kind of encounter with a police officer, and he reaches into his pockets to take out something, and the police officer shoots him. And let's just imagine that the circumstances are such that this is utterly unreasonable. And then the same person, indicted for the same offense, not convicted of that offense, same circumstances, the police shoot him. Now he's not going to be treated in any respect the same way. Why should that be so? I think because the fact of incarceration really is a game-changer. When that person's out on bail, nobody's going to know that. So he has exactly, or she, the exact same expectations as any reasonable individual, the same expectations as the individual in Graham v. Conner, who's doing nothing more than trying to buy orange juice in a convenience store. There are rules that apply to that, and they should be sufficient, and they should be objective, and that's the Fourth Amendment standard. When you're in the incarceration context, things are different. The margin for error for the guards is quite different. The need to protect the other inmates from a potentially violent person doesn't have the same kind of direct analog when something's unfolding in the street. Sometimes it can, but the quarters, I think, are going to be different in the main, in the incarceration context. And so I think it makes sense to apply a standard that's slightly more forgiving of the prison guards than of the police officers. I think that's the way it should be. Ginsburg. It's confusing, excessive use of force, but yet, what does the reckless add to it? If it's an excessive use of force, isn't that at least reckless by definition? I think often it will be. We're not here to defend the recklessness instruction as the platonic sort of form. We actually think that applying Judge Friendly's instruction from Johnson v. Glick is the right way to go, which we think provides a little more separation between the two. I don't think, though, I mean, we can obviously come up with hypothetical situations where there are going to be different applications. I think the principal difference here is this instruction, both in the Eighth Amendment context and in the due process context in Johnson v. Glick, I think it gives the jury a practical landing place when they think, you know, with the benefit of hindsight, I wish the police, I wish the corrections officer hadn't done that. But I don't think it was completely outside of the bounds of what was reasonable. I certainly don't think it's so purposeless and so arbitrary that it gives rise to an inference that it had a punitive motive. That gives the jury kind of a reasonable landing place, and I think this case is actually a pretty good illustration of this. I think if you look at this and you ask yourself, was it reasonable to use the taser? That's a debatable question. Was it really punitive? Was it unrelated to an interest in trying to get the handcuffs off? Of course not. And so I do think in cases like this, it gives the jury an appropriate landing place to come up and make a judgment that doesn't second-guess the officers. And this Court has said so many times that deference to prison officials is an important value, and I think this test that we've proposed that, again, originates with Judge Friendly in a due process case. Sotomayor, you're loading the deck completely, because you're instructing the jury first to give the police officer's deference, and then you're now giving them an instruction that assumes that whatever they do is okay. I don't think there's no – there's – by adding that kind of subjective intent that you want, maliciousness and wantonness, which are not – are only one part, as you're – as the Assistant Solicitor General said, only one part of the Johnson test. But if I could just say the way you've articulated in your brief has really loaded the deck completely. Well, in fairness, and to correct the Assistant to the Solicitor General, the instruction we asked for, which is at Joint Appendix 65, it has all of the Johnson factors. Now, it focuses, as we think, and that's the pattern jury instruction in an excessive force case for a prisoner in the Seventh Circuit, we think it gets it right, which is it focuses the ultimate inquiry on this, is it a punitive intent or is it a good faith effort to restore order. But then if you look for the factors that the jury can consider, all four – all the rest of the Johnson factors are there. And we think that's actually the best reading of Bell v. Wolfish, too, which is to say it provides objective factors, but then it's basically asking you can look at those objective factors, and it allows for a punitive intent. Bell v. Wolfish, the first part of the application section of that opinion, goes to whether there's an intent to punish, it assumes there's not, and then it goes to the objective test and says it, in that particular case, that the conditions met that – those conditions as well. But it treated it as alternative factors, though. Well, I think alternative ways to prove a punitive intent, and if you look at Bell v. Wolfish, when it talks about those objective factors, it then says, so if you have purposeless or arbitrary government action, the court may infer an intent to punish. So it's objective factors in service of what is ultimately a subjective inquiry. The other thing I think that needs to be added, though, is that Bell v. Wolfish – we think we win under it, but it is a test that was really designed to judge some conditions, questions. And we think Johnson against Glick, and we think in the – in the Eighth Amendment context, Whitley and Hudson, are directed at the unique dynamic that you have in excessive force cases. Am I right that the pattern instruction in this case, the pattern instruction asked only the excessive force question, asked the jury to decide whether the force was excessive in light of the particular facts and circumstances? Well, okay. So there were two pattern instructions, neither of which were used. There was the pattern instruction which my friends wanted to have, which was the Fourth Amendment pattern instruction. There was the pattern instruction that was the Eighth Amendment standard that we wanted to have, and Judge Krabs essentially split the difference and came up with this non-pattern jury instruction that asked the excessive force question and baked in this notion of recklessness. Now, we think, obviously, that the lowest standard of intent that could be compatible with the Due Process Clause is recklessness, and so we think you should affirm if you think recklessness is the standard. But in fairness, we think the most coherent way to approach this issue is to apply a single unitary standard to pretrial detainees and post-convicted inmates when you're talking about these kind of excessive force claims. Kagan. Kagan. Mr. Clement, why not look at it this way? I mean, you said, and it's really the basis of your argument, that being in an institutional setting is the game-changer. It's no doubt it's important, but there's another potential game-changer as well, and that is this question of have you actually been convicted? Has the legal system found that you're a person who is a wrongdoer? So if we say that both of these things are important, why shouldn't we adopt a set of principles that say it is we're looking for objectively reasonable conduct, but in looking for that, of course, we take into account the prison circumstances. Of course, we take into account the context in making that evaluation, so that the person in prison is not the same result as the person in prison because the contexts are different. But still, the test, the basic test is the same because they're both people who have not been found to have done anything wrong. Well, a couple of responses, Justice Kagan. I mean, obviously, you could try to take the Fourth Amendment test and you could adjust it, try to adjust it for the prison conditions. We don't think that that's going to work in a way that gives sufficient deference to the prison officials. We do think, this Court has said so many times, they're in a unique environment. It's not something that the normal jury is going to have any sort of insight into. So I think if you just ask them was it reasonable in hindsight, I don't think you're going to get sufficient deference. So that's one reason. I would think that the jury would give a lot of deference to prison officials, in part because they're unfamiliar with the circumstances, and folks will come in and will say, you know, here's — I think that there's — that that will be the natural tendency. I mean, I hope you're right for the sake of my clients, but I think that tendency is going to be embodied much more if you let them take into account good faith. And I think that's a really important way of thinking about the question here, because if you look at their proposed jury instruction at JA 78, it's the one thing the jury is told they can't take into account, is whether there was good faith. And that does not seem particularly productive. Another point you made was that, you know, there is this difference that these individuals are — have not been convicted. And I do think that's important, and I've talked about a couple of instances where I think that that makes an outcome-determinative difference. But you also have to take into account that the Bell decision itself said the presumption of innocence has nothing really to do with this, and I think that was a reflection of the reality that when the — an institution is trying to deal with pretrial detainees and inmates, it's not dealing with different entities. Another thing I'd like to say about Bellevue-Woolfish is I do think it's an analysis that applies most readily to conditions cases. And there are a number of cases that we cite in footnote 9 of our red brief involving the lower court's applications of various tests requiring subjective intent. There's a D.C. Circuit case called Norris against the District of Columbia. I paid more attention on rereading it because I noticed that Justice Ginsburg had written the opinion. It's decided in 1984, and I think it's actually quite instructive, because in 1984, the D.C. Circuit had the benefit of Bellevue-Woolfish. It also had the benefit of Johnson against Glick. And when it confronted an excessive force claim as opposed to a conditions claim, the D.C. Circuit looked to Johnson against Glick and not to Bellevue-Woolfish, which it doesn't even cite, to provide the relevant standard. And I think that just shows that Judge Friendly got this one right. He has an analysis that, of course, looks to objective factors in terms of the amount of force used, the need for the force, the relationship of the two, but also says, was this a good-faith effort to maintain or restore order, or was this something that was just sadistic and malicious with the intent to cause harm? My friends from the Solicitor General office, I guess, don't like the words sadistic and malicious. I looked them up. I mean, they sound kind of rough, but they actually, you know, Judge Friendly got that right, too. I mean, they're words that basically mean exactly what he said in the rest of the sentence, which is there's no intent other than to cause harm. Kagan. Kagan.  Kagan.        Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. I don't think that's the right reading of it, which is, I think, the ultimate question under that test, and that's certainly the way it's been applied by this Court in the Eighth Amendment context, and you see that in this patterned jury instruction that we've proposed. The ultimate test is, is this a good-faith effort to maintain order, or is this an effort to inflict punishment just for the sake of punishment, and then the rest of the factors inform that, as, of course, they always would. And I think one way of thinking about the question before the Court in this case is that this Court has already borrowed the Johnson v. Glick factors that were due process factors. They've already borrowed them and used them in the Eighth Amendment context. And the question in this case is, should they take that due process test and apply it in a due process case? And that doesn't sound like a difficult question, and I really don't think it is. I think this Court got it right in Hudson and Whitley. You think about those cases. Whitley, it wouldn't matter whether or not that individual going towards an unarmed guard was pretrial or post-conviction, but in Hudson it's the opposite. I mean, Hudson is this case where you have somebody who is singled out for a punitive beating in response to an altercation with the guard. Again, it makes no difference. That's not acceptable behavior, whether or not they're an inmate who's been convicted or a pretrial detainee. Applying one test to both of these very similar individuals seems to be the appropriate response. If there are no further questions. Thank you, counsel. Ms. Ward, four minutes. Thank you. Justice Kagan got it exactly right. The institutional setting is not the game changer. The game changer is the fact of lawful conviction pursuant to due process. That's the dividing line between the right test and the wrong test. Justice Ginsburg also was looking at recklessness in our jury instructions, and you got it right also. Disregard, reckless disregard of someone's rights has no place in a jury instruction that should be objective. And I want to step through the jury instructions because we part ways with Mr. Bash on the jury instructions in particular. If you look at the part of the confusion comes in in the three different uses of recklessness in the jury instructions. As the dissent below noted, there's three different ways that recklessness is used. If you look at 277 of the Joint Appendix, the first use of recklessness is that force is applied recklessly. Well, here we're asking whether force is less than deliberate. If you look at how force applied recklessly is used in Farmer, for example, deliberate indifference, you're looking at you're conflating deliberate indifference with a deliberate act. That's confusing. And question number one of the special verdict questions, excessive force means force applied recklessly that is unreasonable. So again, this is what I was talking about, force applied recklessly that's also not deliberate. And then the plaintiff is required to prove each of the following factors by a preponderance of the evidence. Factor two is the reasonableness test. Factor three, which is in addition to the reasonableness test, is reckless disregard of plaintiff's safety. Which is, again, a different use from acting recklessly. And it's that reckless disregard for plaintiff's safety language that the court said in Farmer was unquestionably related to a culpable state of mind. And then, if there's any question about whether reckless in our jury instructions were related to a bad intent, the third use of recklessness, which is on 277 of the Joint Appendix, 278, about halfway down the page, acted with reckless disregard of plaintiff's rights. The jury instructions define that specifically, not in the special verdict itself, but in the instruction on punitive damages, which is found on page 281, where the court said to the jury that an action is in reckless disregard of plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights. If you find that defendant's conduct was motivated by evil motive or intent, unquestionable bad intent related to that element of reckless or that version of recklessness that was used in the jury instructions. If the Court has no further questions. Roberts. Thank you, counsel. The case is submitted.